FANNIE EDWARDS et al. v. JOHN E. LATIMER, Appellant.

Division Two, July 2, 1904.

1. **PAROL PARTITION: Confirmed in Equity.** A parol partition of land made by cotenants, each party taking possession of his share, occupying and using it or alienating it, will be binding on all such cotenants, and either of said parties or those claiming under him may have the same confirmed in equity.

2. **CONVEYANCES: Consideration: Other than that Recited in Deed: Explanation: Contradiction.** Where the consideration recited in the deed is "love and affection and one dollar," it is competent to show by parol evidence that the real consideration was the grantee's interest in other land for which the grantor had exchanged his interest in the land conveyed. In such case it is unnecessary to decide that where the deed recites "love and affection" as the only consideration, no valuable consideration can be shown, for such deed recites both a good consideration and a valuable consideration. By showing that the valuable consideration was something else than "one dollar," that recital was not contradicted, but simply explained.

3. **PAROL PARTITION: Deceased Grantor: Incompetency of Grantee: Waiver.** The petition charged that defendant and his mother had made a parol partition of lands, and that the mother had made defendant a deed of her interest in one tract, but he had not made a deed to her of his interest in the land in suit. The mother being dead at the trial, the plaintiffs objected to defendant's testifying that the deed to him was a gift, or as to

the consideration for the deed, and the court held that his evidence would be received subject to objection, and thereupon plaintiffs proceeded to cross-examine him at length as to such and all kindred matters, but in reaching his finding of facts the court excluded his testimony. *Held*, that he was clearly incompetent as a witness, since the other party to the contract was dead, but plaintiffs waived their objection thereto by their cross-examination; but since the cause is one in equity, and the finding of the court was clearly right, that defendant had made such contract, whether such evidence be not considered at all, or considered in connection with all the other evidence preserved in the case, the judgment will not be reversed, and the cause remanded for the simple purpose of having such evidence excluded on a retrial.

4. ———: **Evidence.** The evidence showed that the mother by her deed conveyed her three-fifths interest in 160 acres to her son, and that she was put in possession of 247.85 acres in which he owned a two-fifths interest and she three-fifths; that thereafter this larger tract was regarded and treated by him and her as hers; that she alone paid taxes on it; that it was from that time on separately assessed to her; that he made affidavit to that assessment list, declaring it was hers; that he never gave it in as his or paid any taxes on it after that; that he drew a check in her name after her death to pay the taxes on it as hers; that it was rented as hers, and that whatever he did about renting it and collecting the rents he did as her agent; and that his mother said in his presence that she had not given him her interest in the smaller tract but that it was a trade, made in order that he might sell the smaller tract. *Held*, that the deed to him of her interest in the 160-acre tract was not a gift, but was made in pursuance of a parol agreement of partition, and that, although he made no deed to her of his interest in the larger tract, she was from that time the equitable owner of his former interest therein, and that, as she by her will, made long before this parol partition, devised one-half of her estate to plaintiff, plaintiff should be decreed the owner of one-half of that equitable interest, in this suit of partition between him and plaintiff.

Appeal from Pike Circuit Court.—*Hon. D. H. Eby,*
Judge.

AFFIRMED.

*J. H. Blair & Son* for appellant.

(1)   The deed recites that the consideration for the conveyance was "love and affection and one dollar." Where a deed recites a good consideration, it cannot be shown that it was a valuable consideration.   Clarkson v. Honway, 2 P. Wms. 203; Potter v. Gracie, 58 Ala. 303; Latimer v. Latimer, 53 S. C. 483; Winningham v. Pennock, 36 Mo. App. 688; Jackson v. Railroad, 54 Mo. App. 636.   (2)   The consideration stated in the deed being love and affection, to allow parol evidence to show that the consideration was an exchange of interest in lands, would show a consideration inconsistent with and contradictory of the consideration stated, which is not permissible.   McLeod v. Skiles, 81 Mo. 595; Landman v. Ingram, 49 Mo. 212; Nedvidek v. Meyer, 46 Mo. 600; Hickman v. Hickman, 55 Mo. App. 303; Harrison v. McGuire, 18 Mo. App. 517; Tied., Real Prop. (Enlarged Ed.), sec. 801.   (3)   The consideration stated in the deed is not a mere recital.   The parties to this deed, in order to impress upon its face that the conveyance was intended as a gift, state that the grantee is a "son of the grantor herein."   There could have been no other motive for identifying the grantee as the son of the grantor except to show that it was a gift and that the grantee came within the degree of consanguinity within which a good consideration would operate.   (4)   The one dollar stated in the deed is not a valuable consideration.   Houston v. Blackmier, 66 Ala. 559.   (5) Plaintiffs introduced the deed in evidence, consideration clause and all.   Are they not bound by their own evidence, or can they introduce documentary evidence and then be permitted to impeach it and show by parol evidence that some of the statements therein are not true?

*W. O. Gray, Geo. W. Emerson* and *J. D. Hostetter* for respondents.

(1)   A parol partition of lands can be confirmed by a decree in equity at the instance of a devisee of one

of the parties, as in the case at bar.    Gulich v. Huntley, 144 Mo. 241; Cochran v. Thomas, 131 Mo. 271; Sutton v. Porter, 119 Mo. 100.    (2) · The general rule is that the consideration clause in a deed is always open to explanation and that it is competent to show what the actual consideration was by parol evidence and to prove additional items to those set out in the deed, and that it is also competent to show by parol evidence that the consideration is different and even contradictory to that recited in the instrument.   O'Day v. Conn, 131 Mo. 321; Squier v. Evans, 127 Mo. 514; Bank v. Aull, 80 Mo. 201; Baile v. Ins. Co., 73 Mo. 371; Kincaid v. Irvine, 140 Mo. 615; Jackson v. Railroad, 54 Mo. App. 636.    (3)   This being a case in equity, it is true that the appellate court will review the evidence, still in doing so, it will defer largely to the conclusions that the trial court reached. Parker v. Roberts, 116 Mo. 657; Johnson v. Duer, 115 Mo. 366; Lins v. Lenhardt, 127 Mo. 271; Kincaid v. Irvine, 140 Mo. 615; Robertson v. Shepherd & Stone, 165 Mo. 375; Talliaferro v. Evans, 160 Mo. 380; Matthias v. O'Neill, 94 Mo. 530; Bushong v. Taylor, 82 Mo. 666; Berry v. Hartzell, 91 Mo. 138; Springer v. Kleinsorge, 83 Mo. 159; Erskine v. Lowenstein, 82 Mo. 301; Chouteau v. Allen, 70 Mo. 336; Benne v. Schnecko, 100 Mo. 250.


·    GANTT, P. J.—This is a suit for the partition of the real estate devised by Mrs. Mary A. Latimer, of Pike county, to her two children, John E. Latimer and Mrs. Fannie Edwards.

John H. Latimer died about the year 1876 seized in fee of 407.85 acres of land in Pike county, which comprised two tracts separated by a public road, one tract of 160 acres, and the other 247.85 acres.

· John H. Latimer left a widow and five children. His widow elected to take a child's part.   In the settlement of the estate among themselves Z. Taylor Latimer, the oldest child, took his entire portion in money

and personal property so that the real estate was owned by the widow and the other four children, each an undivided one-fifth of the land. Later on Mrs. Fannie Edwards conveyed her undivided one-fifth to her brother John E. Latimer. Mrs. Kate Munroe conveyed her one-fifth to her brother Albert, and he afterwards conveyed his two-fifths to his mother, Mrs. Mary A. Latimer, so that Mrs. Mary A. Latimer owned three-fifths, and John E. Latimer two-fifths.

On May 29, 1886, Mrs. Mary A. Latimer made a will by which she devised to Fannie, then single, and to John E., her son, all her interest in the 407.85 acres. In 1894 John E. Latimer, being desirous of selling the 160-acre tract, which has a house on it, his mother made a deed to him of her three-fifths of the 160 acres, for the recited consideration of love and affection and one dollar. It is alleged by the plaintiffs that prior to said conveyance and to better enable John E. Latimer to sell his share of said 407.85 acres, a mutual partition of said lands was made between Mrs. Mary A. Latimer and her son John E. Latimer, and each contracted to convey to the other as follows, to-wit, said Mary A. Latimer agreed to convey her three-fifths in the 160 acres to her son and he agreed to convey to his mother his two-fifths of the 247.85 acres, and in March, 1894, Mrs. Latimer did convey her three-fifths in the 160-acre tract to her son, but that he neglected to convey his legal title to his two-fifths in the 247.85 acres to her, but that in pursuance of said agreement and contract, defendant, the said John E. Latimer, delivered possession of his said interest in said 247.85 acres to his mother, and she took and remained in sole and exclusive control and possession of said 247.85 acres in fee simple ever thereafter, and defendant represented to her in her lifetime that it was not necessary to make a deed to her of his two-fifths in said 247.85 acres, but that she had the full legal and equitable title to said tract without any other conveyance.

Plaintiff alleged that on the —— day of December, 1900, Mrs. Mary A. Latimer departed this life, seized and possessed in fee simple of said 247.85 acres, and by her last will duly executed, proved and admitted to probate, she devised the same to her said son John E. Latimer and Fannie Edwards each an undivided one-half thereof.

Plaintiff prayed for a decree divesting defendant of the record title to one undivided one-fifth interest in said 247.85 acres and vesting the title thereto in plaintiff, and for a judgment that John E. Latimer and Fannie Edwards each is entitled to one undivided one-half of said 247.85 acres, and for partition between them as aforesaid and that as the same could not be partitioned in kind, that the said land be sold, and, after paying the costs, that the proceeds be equally divided between the two, and for all proper relief.

Defendant denied that he and his mother made a voluntary partition as alleged; admits he and his mother owned the lands described in the petition; denies that for any valuable consideration he agreed to convey his undivided two-fifths in said 247.85 acres to his mother.

Further answering he says his sister and himself are entitled by the will of his mother to whatever interest his mother owned in said tract of 247.85 acres; that on March 23, 1894, his mother for love and affection conveyed her interest in the 160-acre tract, and the same was a gift to him by her, and by him accepted as such; that at the death of his mother defendant owned in fee simple an undivided five-twelfths in said 247.85 acres, and his mother seven-twelfths therein; that since the death of his mother he is the owner of seventeen twenty-fourths of said tract of 247.85 acres, and the plaintiff Fannie Edwards is the owner in fee simple of seven twenty-fourths thereof. He prays the court to adjudge their respective interests accordingly and decree partition in kind.

The case was tried at the June term, 1901, and resulted in a decree that plaintiff Mrs. Edwards, and defendant John E. Latimer, were each entitled to an undivided one-half of said 247.85 acres and ordering the land to be sold and the proceeds equally divided after the payment of costs. Defendant appeals.

The following facts were found by the circuit court and the evidence fully justifies its findings.

"In March, 1894, the widow, Mary A., resided in the town of Bowling Green, Missouri, a few miles from the land in controversy. She had lived there since about the year 1877 or '78. During the whole time of her residence in Bowling Green, the defendant, John Latimer, made his home with her. Fannie Edwards and her husband also lived with Mary A. until about four years before the latter's death, which occurred December 19, 1900. Fannie was the youngest child. Up to a few years before her death, Mrs. Mary Latimer was able to and did attend to her business affairs, loaning and collecting money, renting the farm and collecting rents. The actual operations on the farm, both prior to and after the deed from Mary A. to John, in the way of making arrangements for repairing the fences, taking in and caring for stock and collecting rents was to a great extent superintended and conducted by John. During the last five or six years of her life, Mrs. Mary Latimer was afflicted with dropsy and heart trouble, her physical condition being such that she could not go out to the farm. The 160-acre tract was improved, having on it a dwelling house and barn. The 247.85-acre tract was, with the exception of fencing, unimproved. At one time a small cabin, occupied by a negro, had stood on it, but this burned down, just when does not appear. On the twenty-third day of March, 1894, the widow, Mary A. Latimer, executed to her son John, the defendant, her deed to her undivided three-fifths interest in the 160-acre tract. The plaintiffs contend that in March, 1894, the defendant and his mother made a parol

partition, or trade, of their respective interests in the 407.85 acres, the defendant, in and by such partition, taking the 160-acre tract, and his mother the 247.85-acre tract, and that John was to execute to his mother his deed for two-fifths interest in the last-mentioned tract, and that she was to execute to him her three-fifths interest in the 160-acre tract, and that the last-mentioned deed was executed under said partition. The defendant denies that there was any such partition or agreement and contends that said last-mentioned deed operated as a gift by his mother to him of her said three-fifths interest in the 160-acre tract.

"The defendant never did execute to his mother any deed for his interest in the 247.85-acre tract. Is the plaintiffs' contention supported by evidence so clear, cogent and conclusive as to leave in the mind of the chancellor, no room for reasonable doubt? In reviewing the entire evidence in the case the court finds that in 1886, Mary A. Latimer prepared her will, which contained among other provisions, the following, viz.:

" 'I will, bequeath and devise unto my son John Latimer and my daughter Fannie all my interest in and to the old home farm, the same being about four hundred acres in township 52, range 3 west, being the land owned by my husband at the time of his death.'

"This will after the death of testatrix was duly probated, and is the same will read in evidence. At its date the widow then owned an undivided three-fifths interest in the 407.85 acres. Prior to the death of Mary A. the provisions of the will were in part at least known to the daughter Kate, if not to Fannie. In the early part of March, 1894, the plaintiffs went to California on a visit. Up to this time the relations between Fannie and her mother and brother John were friendly and cordial. The plaintiffs were in California about two months. Shortly after they left home the defendant secured the execution by his mother of the deed in controversy. The plaintiffs learned of the fact from an

item in a newspaper that was sent to them while in California. The afternoon of her return home (May, 1894) Fannie, in the presence of John and her mother, said, 'Mamma, I see you gave John 160 acres of the old farm.' To which the mother replied, 'No, Fannie, it was only a trade, that he might sell.' After some objections by counsel, the witness (Fannie) restated the conversation as follows: 'The afternoon I arrived home from California, in the presence of John and my mother, I told her I had seen she had given John 160 acres of the old farm. She says "No, it is a mistake, Fannie, I haven't done anything of the kind; I simply gave him a deed to the 160 acres where the improvements are, so he could sell it, *for his interest in the balance of the place*." John says, "Yes, Fan, she didn't give it to me." ' Sometime after the last conversation, Fannie's husband, one day at the dinner table in the presence of John, Fannie and their mother, said, 'Mrs. Latimer, the way the record shows it, John owns two-fifths of the old farm.' John spoke up and said, 'I don't understand it that way,' and 'my husband spoke up and said, "It don't make any difference, the record shows it that way," and mama says, "John understands it was a trade as well as myself; it was only a trade." ' Again, on another occasion, when the necessity of John making a deed in return for the deed he got from his mother was being discussed by John, Fannie and Mrs. Latimer, the latter said to Fannie in the presence of John, 'Fannie you needn't fret over that any longer, John spoke to a lawyer, and the lawyer said it is not necessary for a deed to be passed.' There are other conversations to the same effect detailed by the same witness. The claims made by Mrs. Mary Latimer to and in the presence of John that the transactions between them were an exchange or trade of their respective interests, were not only not denied by John, but he expressly admitted and asserted that the conveyance to him by his mother was not a gift.

"Is Mrs. Edwards, who is an interested party, and since the execution of the deed in controversy, not on friendly terms with the defendant, supported and corroborated in her evidence by other witnesses? The widow Latimer, after execution of her deed to John, told her son-in-law, Gilbert Monroe, that John did not have any interest in the 247.85-acre tract, and Monroe before the old lady's death told John of said statement, and after her death suggested to John that he ought to make a deed to Fannie for a half interest in the land, to which John replied that it would be owing to how they acted, and how Mrs. Edwards acted. Mrs. Monroe, referring to her mother's deed to John, testified, 'I have heard mother speak a number of times in John's and my presence *it was just a trade,*' 'trade of land, 160 acres where the buildings was,' 'she traded John the 160 acres where the buildings stood for his interest in the 240 acres of the other land.' 'John always said it wasn't necessary for him to make a deed back,' and that he 'talked to several and that it wasn't necessary to pass a deed to her' and witness further stated that John always talked like the 247.85 acres would be divided equally between him and Fannie under his mother's will.

"Prior to 1894, the Latimer lands were assessed to the estate of John H. Latimer, deceased. After 1894, the land in controversy was assessed to Mary A. Latimer, or to her estate. In 1895 or '96, John sold the 160-acre tract to J. E. Stewart. In his sworn assessment lists for 1899 and 1900, John did not return the land in question, or as having any interest in the same. In the assessment list of Mary Latimer for 1899 the 247.85-acre tract is returned as her property, and the list is signed and sworn to by John E. Latimer before Ollie Parker, the assessor. Mrs. Mary Latimer's assessment list for 1900 included the same land and was signed and sworn to by her. The assessment lists for 1898, 1896 and other years after 1894, were signed in the name of

John. At the time of widow Latimer's death there stood assessed against the 247.85-acre tract in the name of Mary Latimer, a tax of $31.79. At the time of her death she had a balance to her credit in the Farmers Bank, Bowling Green, Missouri. In January, 1901, the defendant signed his mother's name 'by J. E. Latimer' to a check on said bank for the sum of $64, and drawing the amount paid said tax with the same.

"The greater weight of evidence shows that after the deed from Mary A. to John, the former had control of the 247.85-acre tract, and leased it at various times to different tenants. John looked after the place for his mother. This continued up to the last two or three years before the widow died, during which period she gave John the rent that came into his hands from the place to keep up the place and pay the taxes. George Schwegman, a witness for defendant, testified that some time after 1894, he rented the 247.85-acre tract from John, and paid him the rent. This was about 1897, and John looked after the place and the stock and had witness fix the fences, for which John paid him; that John pastured his stock on the place. This witness's testimony is weakened by his contradictory statements. He first said he 'understood Mrs. Latimer owned the place' then he said he 'didn't know anything about it.' J. E. Stewart, witness for defendant, says John 'has exercised control of that place during the past five years, and how much longer, I don't know.' That John rented the lands and collected the rents. That he understood the land belonged to the Latimers, but which one he could not state. That he never heard John say anything about owning the place. The witness Burk, witness for defendant, had rented the place off and on for ten or eleven years. The last renting was after 1894, when he made his arrangements with Mrs. Latimer for the land. He says, 'I told her to let me know, and she let me know by John what I could have.' This witness also states that he heard Mrs. Latimer state that she

had given John her part of the 160 acres. This was in February, 1896. That in renting the 247.85-acre tract for the years 1894, '95, '96 each year he went and saw Mrs. Latimer, and told her what he wanted to do and she let him know by John. That he rented from Mrs. Latimer and paid the rent sometimes to her, and sometimes to John when he saw him in town. That in paying the rent money to John, he made such payment to him, for his mother, as her agent. Taylor Latimer, testifying for defendant, details a conversation that he had with his mother, a year or so just before her death. She had a talk with the plaintiff's husband, and had become excited and 'worked up,' and after 'she got kind of quiet,' she said to Taylor that sometimes she thought she hadn't done right in deeding John the 160 acres, but she didn't care, and was going to let it stand as it was. She 'just said she had deeded the interest in the 160 acres.' This witness, further along in his testimony, but evidently referring to the same conversation, says, 'Of course she said he owned his two-fifths in the 247 acres.' On cross-examination the witness's answers were evasive, contradictory and argumentative. The court is not satisfied that the expression attributed by the witness to his mother was used by her. But even if used it is not inconsistent with the plaintiff's contention, as at the time of the alleged conversation, John did have the legal title to a two-fifths interest in the 247.85-acre tract.

"On one occasion the widow Latimer according to the testimony of Albert Latimer, who is the administrator upon his deceased mother's estate, told him that she was satisfied John ought to have the 160 acres; that she ought to favor him that much in deeding him the 160 acres. But in the same conversation he says, *I am telling what some other said.* 'She said this herself that there had been some dissatisfaction, but she was satisfied and was going to let it stand.' This witness (Albert) denies that he was present at a conversation which

Fannie Edwards testified took place between Albert, John and herself; and in weighing the evidence the court disregards said alleged conversation, the same not having been clearly shown to have occurred.

"The matter in issue between the plaintiffs and defendant being the alleged parol partition, and Mrs. Mary Latimer being one of the original parties to the same, she being dead at the time of the trial, the defendant being the 'other party,' was incompetent as a witness in the cause. His evidence over the objections of the plaintiffs was admitted, subject to the final decision of the court as to its competency. The court further holds that plaintiffs did not waive their said objections by cross-examining the defendant. They were not apprised as to what the ruling of the court would be on the question of competency; and in case the defendant should be held a competent witness, they were entitled to the benefit of his cross-examination.

"The court finds from the evidence in the cause that in March, 1894, Mary A. Latimer and John Latimer made a parol partition between themselves of their then said respective interests in the 407.85 acres aforesaid; the said John, under such partition, taking the said 160-acre tract, and the said Mary, under such partition, taking the said 247.85-acre tract, thereby severing their joint possession, as tenants in common, in and of the original 407.85 acres, and that thereafter the said Mary remained in sole possession and control of said 247.85-acre tract until her death, and that after such parol partition, whatever acts of control or supervision were done, performed or exercised by John Latimer over said 247.85-acre tract, were so done, performed and exercised by him as agent for his mother. That upon such parol partition being made as aforesaid, the said John Latimer became and was entitled to a deed from the said Mary A. Latimer conveying to him her legal title to her three-fifths interest in and to the 160-acre tract; and on the twenty-third day of March, 1894, the

said Mary A. Latimer did make, execute and deliver to the said John Latimer a good and sufficient deed, therein and thereby conveying to said John her, the said Mary Latimer's, legal interest and title in and to said 160-acre tract; that upon said parol partition being made as aforesaid, the said Mary Latimer became and was entitled to a deed from said John Latimer, conveying to her, the said Mary Latimer, all of the said John Latimer's legal title and interest in and to the said 247.85-acre tract; and having wholly failed to execute such deed, the equitable title to the two-fifths interest formerly owned by John in said 247.85 acres belonged to and remained in said Mary Latimer until her death. So that at the time of her death the said Mary was seized in fee of an undivided three-fifths interest in and to the land sought to be partitioned, and held the equitable title to the remaining two-fifths of the same. By her last will Mary Latimer devised her entire interest in the 247.85-acre tract to her daughter, the plaintiff, Fannie Edwards, and her son, the defendant, John Latimer. In the deed from Mary Latimer to John Latimer the consideration is expressed to be 'one dollar and love and affection.'

"The defendant contends that no other or different consideration can be shown, and that the transaction must be conclusively presumed to be a gift. 'In many states, parol partitions are recognized and protected and a deed of partition, though insufficient of itself to consummate a partition, may, taken with other evidence, establish such a parol partition as the courts will not permit to be disturbed, unless it was clearly unequal when made' (cited in Sutton v. Porter, 119 Mo. 100, 104). Winningham v. Pennock, Exr., 36 Mo. App. 688, was a case where the grantee in a deed brought suit against the grantor for a breach of the covenant against encumbrances; the defendant pleaded that the deed was voluntary and that there was no consideration to support the covenant. Judge ELLISON rendering the opin-

ion says: 'Ordinarily the grantor may show a different consideration from that expressed in his deed, though it must be of the same nature. But in a case like this he will not be permitted to show that it was a good consideration as distinguished from a valuable consideration.' The case was decided in 1899. The defendant also refers the court to Jackson v. Railroad, 54 Mo. App. 636, which was decided in 1893. The same judge (ELLISON) rendering the opinion declares the law as follows: 'It was once the view of the courts that the consideration in a deed could not be shown to be different in amount from that stated. This position was receded from. It was then held by many that while a different amount from that stated might be shown as the real consideration, yet the character of the consideration could not be shown to be different. This position was also overthrown; so that now it may be stated as the holding of nearly all the American courts, that not only the amount of the consideration may be questioned by oral testimony, but the parties are not estopped from showing the character of the consideration to be different from that stated. . . . I will remark, parenthetically, that I make no reference here to the fundamental divisions of consideration. As whether when one kind of consideration is stated, as, for instance, a *valuable* consideration, you would be permitted to show a *good* consideration, as natural love and affection.' In Mrs. Latimer's deed the expressed consideration is both a 'good' one and a 'valuable' one, although the 'valuable' consideration is nominal. In such case there is no reason why the real nature and character of the 'valuable' consideration cannot be shown. It was expressly so ruled in Scott v. Scott, 1 Mass. 527 (cited in 6 Am. & Eng. Ency. of Law (2 Ed.), p. 767, n. 1); and in the absence of any contrary ruling of the courts of Missouri, the court adopts the principle announced as decisive of the point raised by the defendant.

"The court finds that upon the death of Mary A.

Latimer and the probate of her will, defendant became and was seized in fee of an undivided one-half interest in said 247.85-acre tract, and that he held the legal, but not the equitable, title to an additional undivided one-fifth interest in said tract, and that at the time last aforesaid, the plaintiff Fannie Edwards became and was seized in fee of an undivided three-tenths interest in said 247.85-acre tract, and held the equitable title to an additional undivided one-fifth interest in the same, the legal title thereof being in John Latimer as aforesaid, and the said John Latimer having wholly failed to execute either to the said Mary Latimer or to her privy in estate, the said Fannie Edwards, his deed conveying to the said Mary Latimer his legal title to the undivided two-fifths interest in said 247.85-acre tract, or, after her death, to Fannie Edwards, her devisee, his legal title to an undivided one-fifth interest in said 247.85-acre tract, which in good conscience and equity he should have done, it is, therefore, ordered, adjudged and decreed by the court that the said John Latimer be and he is hereby divested of his legal title to an undivided one-fifth interest in said 247.85-acre tract, and the legal title to said undivided one-fifth interest in said 247.85-acre tract is hereby vested in the said Fannie Edwards; that with the title to said 247.85-acre tract so found, divested, vested, adjudged and decreed as aforesaid, the plaintiff Fannie Edwards and the defendant John Latimer are tenants in common of said 247.85-acre tract, each owning an undivided one-half interest therein. It is further ordered, adjudged and decreed by the court that said 247.85-acre tract be partitioned between the said Fannie Edwards and the said John Latimer; and the court further finds that said property is not susceptible of division in kind, and it is, therefore, further ordered and adjudged that the same be sold for cash in hand by the sheriff of Pike county, Missouri, at the next regular term of this court.''

I.   It is settled law in this State that a parol partition of land made by cotenants, each party taking possession of its share, occupying and using it or alienating his or her share, will be binding on all said cotenants and when acquiesced in for a long time will not be disturbed at the suit of a creditor of one of the parties. [Gulick v. Huntley, 144 Mo. 241; Sutton v. Porter, 119 Mo. 100.]    And either of said parties or those claiming under him may have the same confirmed by a decree in equity.    [Hazen v. Barnett, 50 Mo. 506; Gulick v. Huntley, supra; Cochran v. Thomas, 131 Mo. 271.]

One of the principal contentions of defendant is that parol evidence was not admissible to show that the deed made to him by his mother, Mrs. Mary A. Latimer, was in consideration of his giving her his interest in the 247.85 acres, because her deed to her three-fifths in the 160 acres recites the consideration as "love and affection and one dollar;" that the consideration being love and affection, to allow it to be shown by parol that it was an exchange of land would show a consideration inconsistent with and contradictory of the consideration stated.

The general rule in this State is that the consideration clause of a deed is open to explanation; that is to say, that while it is not allowable to show no consideration for the purpose of defeating the operation of the deed as a grant, the true consideration may be shown. Thus in O'Day v. Conn, 131 Mo. l. c. 327, it was said: "It is now well settled that 'not only the amount of the consideration may be questioned by oral testimony, but the parties are not estopped from showing the character of the consideration to be different from that stated.'" [Hollocher v. Hollocher, 62 Mo. 267; Fontaine v. Bank, 57 Mo. 552; Henderson v. Henderson's Exrs., 13 Mo. 151; McCrea v. Purmort, 16 Wend. 465; Laudman v. Ingram, 49 Mo. 212; Jackson v. Railroad, 54 Mo. App. 642; Squier v. Evans, 127 Mo. 514.]

The evidence offered by plaintiff and admitted by

the court had no tendency to defeat the operation of Mrs. Latimer's deed to her son. Its only purpose was to explain what was the true consideration for said conveyance. It is unnecessary to determine in this case whether if a deed recites the consideration to be only "love and affection," it can be shown to have been for a valuable consideration, as this deed recites both a *good* and a *valuable* consideration and this being so it was clearly competent to show what the valuable consideration was. By so doing the recital was not contradicted, but simply explained and its true amount shown. [Scott v. Scott, 1 Mass. 527.] Nor was there any estoppel on plaintiffs from the fact that they introduced the deed. As before remarked, they did not deny the operative effect of the deed as a conveyance; indeed plaintiffs' contention was that it was the fulfillment of her contract of exchange on the part of Mrs. latimer, and the investiture of defendant with the whole legal as well as equitable title to the 160 acres in order to enable him to make an advantageous sale of it.

II. It is also urged by defendant that the court erred in excluding him as a witness. When he was offered as a witness plaintiffs objected on the ground that as the only controversy between the parties was as to the contract between him and his mother as to the consideration of his deed for the 160 acres, which plaintiffs insisted was the conveyance by defendant of his two-fifths interest in the 247.85 acres, and on the part of defendant that it was a gift pure and simple. The court did not rule finally on the objection, but took the evidence subject to objection and finally held that defendant was incompetent for any purpose. But the record discloses that while the plaintiffs knew defendant was incompetent as to the contract made between him and his mother and had objected to him as incompetent, they permitted him to testify and deny conversations and declarations which had been testified to by Mrs. Ed-

wards and Mrs. Monroe without objection, and proceeded to cross-examine him as to new matter, such as his mother depositing her money in a certain bank, and to Mrs. Edwards saying to him he had obtained title to a large part of his mother's farm, and as to the procuring of the deed to be written and by whom. By so doing we think the plaintiffs waived their objection. While we think defendant was incompetent because his mother, the opposite party to this contract, was dead, yet having permitted him to testify without objection in denying the conversations attributed to him and his mother and sister by his sisters, Mrs. Monroe and Mrs. Edwards, when his incompetency was apparent, plaintiffs could not afterwards be heard to object on that account. [Maxwell v. Railroad, 85 Mo. 95; State v. Hope, 100 Mo. 347; Hickman v. Green, 123 Mo. 173; Nichols v. Nichols, 147 Mo. 403.]

If plaintiffs desired to insist on their objection they should have been consistent and not invited the very character of evidence which they were urging was incompetent. But while the court finally excluded all the evidence of the defendant as incompetent, still it was admitted and is preserved in the record, and we are at liberty in an equity case to consider it under such circumstances, and giving it due consideration with all the other evidence in the case, still we think the finding of the court was right and the decree ought not to be reversed because the circuit court excluded defendant's testimony after hearing it. If the cause should be reversed because he was not permitted to testify, clearly on the next trial the objection would be renewed and his evidence excluded. [Cox v. Sloan, 158 Mo. 429; Sheridan v. Nation, 159 Mo. 41.]

Upon a review of the whole testimony and deferring largely to the superior opportunity of the trial court of seeing the witnesses and observing their manner of testifying, we are of opinion there was sufficient evidence to justify the decree. We think the evidence

clearly shows that after the making of the deed by Mrs. Latimer to defendant, the 247.85 acres was regarded and treated by him and his mother as hers; that she alone paid taxes on it; that it was from that time separately assessed to her; that defendant made affidavit to the assessment list, declaring it was hers; that he never gave it in or paid any taxes on it after that date, and drew the check in her name after her death to pay the taxes on it as hers; that it was rented as hers and whatever he did about renting it and collecting the rent he did as her agent. We think that by her will Mrs. Latimer intended to divide her property equally between him and his sister, and when she conveyed him her interest in the 160 acres, there had been no estrangement between her and her daughter, the plaintiff, and when the daughter afterwards learned of the deed both Mrs. Latimer and defendant insisted it was a trade of an interest in one tract for an interest in the other—a trade fair and just on its face, but if it was a gift it results in a most unequal division between them, the defendant retaining two-fifths in his own right, and receiving, by his mother's will, one half of his mother's three-fifths, or, as he states it, he would get seventeen twenty-fourths and his sister only seven twenty-fourths. That this was not Mrs. Latimer's intention when she made the will under which plaintiffs seek partition is too clear for doubt. If she ever changed her desire, no witness heard her express it. When her attention was called to the deed she had made defendant which might change the disposition she had made of her property by giving John her interest in the 160 acres, she at once repudiated it, and said she had traded John her interest in the 160 acres for his interest in the 247.85 acres to enable him to sell his. This was a reasonable exchange and is entirely consistent with the written will of Mrs. Latimer already executed and known to Mrs. Monroe.

We think the evidence cogently demonstrates outside of the evidence of Mrs. Edwards and the defend-

ant that Mrs. Latimer and her son made a voluntary partition of their lands, and that both acted upon and acquiesced in that partition from 1894 until the death of Mrs. Latimer, and that the judgment of the circuit court was right and it is accordingly affirmed.

All concur.