## CARTER M. BARRY, Appellant, v. C. L. BERNAYS et al., Administrators, Respondents.

**St. Louis Court of Appeals, December 5, 1911.**

1. **CONTRACTS: Joint Adventure: Division of Profits: Interest: "Profits" Defined.** An agreement between two persons for the purchase and sale of real estate and a division of the profits, which binds one of them to furnish the money for the purchases and the other to furnish his efforts and experience and which provides that the latter shall receive one-third of the profits made in the venture, requires that interest on the money furnished for the purchase of unproductive real estate, from the dates of purchase, be allowed before profits can be distributed; "profits" being the excess of returns over advancements, and interest on the price of unproductive property being a part of its cost.

2. ——: ——: ——: **Action for Accounting.** In an action for an accounting of profits in a joint adventure for the purchase and sale of real estate and a distribution of profits, evidence *held* to support a finding that one of the parties had paid taxes on property acquired pursuant to the agreement, requiring the court to give him credit therefor.

3. **EVIDENCE: Conveyances: Explaining Consideration Clause.** A deed by a party to a joint adventure for the purchase and sale of real estate and a distribution of the profits, which conveys real estate acquired pursuant to the agreement and which recites a consideration in the form of the usual receipt clause in deeds, is not conclusive on the parties to the joint adventure; and in an action by the adverse party for an accounting, it is competent to show the actual consideration for the conveyance, as bearing on the amount for which the other party must account.

Appeal from St. Louis City Circuit Court.—*Hon. Hugo Muench,* Judge.

REVERSED AND REMANDED (*with directions*).

*T. J. Rowe, Thos. J. Rowe, Jr.,* and *Henry Rowe* for appellant.

*Chas. F. Krone* for respondents.

NORTONI, J.—This is a suit in equity for an accounting. The finding and decree were for plaintiff in the amount of $357, and from this judgment he prosecutes the appeal, on the theory that he is entitled to recover a much larger amount.

The suit was originally instituted against Dr. A. C. Bernays. Before the trial Dr. Bernays departed this life and the cause was subsequently revived in the name of his administrators who appeared and defended it.

It is shown that during his lifetime Dr. Bernays and plaintiff entered into an agreement whereby plaintiff should assist Dr. Bernays about selecting and purchasing certain real property in the city of St. Louis, to be thereafter sold at a profit. For the purchase and improvement of the property, Dr. Bernays agreed to furnish the money and plaintiff his efforts and experience. It was agreed that upon the sale of the property at a profit, plaintiff should have one-third of whatever profits were made in the venture. In accordance with this agreement, plaintiff selected as a good investment fourteen lots on Grier avenue, St. Louis, in city block 5198. On September 24, 1904, Dr. Bernays purchased lots 16 to 25, inclusive, in that block from Mr. T. J. Rowe and paid $5,185 therefor. On June 3 thereafter, in 1905, he purchased through the negotiations of plaintiff lots 26 to 30, inclusive, in the same city block from Cornet & Zeibig and paid therefor $1,600. As before stated, the two purchases included fourteen lots which at the time were unimproved, and all were purchased through the negotiations of and under the arrangement with plaintiff above stated. Dr. Bernays expended $1,788.66 in improvements thereon, such as sidewalks, streets, etc., but it does not appear when these improvements were paid for. All of these lots were unoccupied and unproductive. On December 8, 1905, Dr. Bernays exchanged the entire property, consisting of fourteen

lots, to another person for an equity in a building known as No. 18 South Broadway, St. Louis. This building was incumbered at the time by deeds of trust thereon in the amount of $25,000. Dr. Bernays' lots were unincumbered when this exchange was made, except as to the current taxes then due for 1905, which the purchaser assumed. The consideration of the deed executed by Dr. Bernays by which he conveyed the fourteen lots on December 8, 1905 is recited to be $15,000 and the consideration of the deed which he received conveying the Broadway property is recited to be $40,000. The current taxes for 1904 on the several lots which Dr. Bernays owned at the time are shown by the testimony of plaintiff to have been a charge thereon of not less than $90. The evidence is quite conclusive that, notwithstanding the recital in the deeds exchanged on December 8, 1905, the real consideration which Dr. Bernays received for the fourteen lots was an equity of redemption in the Broadway property valued at $10,000. This property was incumbered by mortgages to the extent of $25,000 and a number of real estate experts place its value at that time at $35,000. Plaintiff himself valued it at $40,000 and a witness who owned it immediately before placed the value at $30,000. The evidence is overwhelming to the effect that this equity which Dr. Bernays received for the fourteen lots was of the value of $10,000 and no more.

The court found such to be the value of this equity and charged it in the account at that amount. In stating the account, the court credited Dr. Bernays with an investment of $6,785 on September 24, 1904, as though all the lots were purchased by him on that date, and computed interest on this amount at six per cent from September 24, 1904 to December 8, 1905, that is, until he exchanged the property for that on Broadway. There are two complaints leveled against this credit, as follows: First, it is said the court

should not have allowed interest at all on any part of the purchase money; and, second, that it erred in computing interest on $1,600 from September 24, 1904, for the reason that this amount was not invested by Dr. Bernays until June 3, 1905, when he made the second purchase of lots. There can be no doubt that the latter objection is a sound one, for Dr. Bernays invested on September 24, 1904 only $5,185 for the lots which he purchased from Mr. Rowe and the investment of $1,600 calculated by the court as of the same date was not made until June 3, 1905, or at the time of the second purchase of lots from Cornet & Zeibig. We do not accept the view, however, that the court should not have allowed interest at all on these investments, for the agreement of the parties is that they should divide the profits accrued upon finally selling the property. Plaintiff contributed his labor and experience in the venture as against the cash of Dr. Bernays, but there can be no doubt that before profits may accrue there must first be deducted the purchase price together with interest thereon, for the property was wholly unoccupied and unproductive. Profits, or net profits, which are said to be synonymous, are the excess of returns over advancements or the excess of what is obtained over the cost of obtaining the property. Interest on purchase money of unproductive property is certainly a part of its cost. [See 1 Lindley on Partnership (2 Ed.), 8.] And in case of investments in unoccupied and unproductive lands, it is said that there are no profits until the purchase money with interest thereon are first repaid from the sale. We believe this to be the proper view. For an authority directly in point, see Hentz v. Pennsylvania Co. for Ins., 134 Pa. 343. We, therefore, rule that the court very properly allowed interest to the estate of Dr. Bernays, but erred in the amount of the calculation, for it computed interest at six per cent on $1,600

from September 24, 1904, to June 3, 1905, when such amount was not invested until the latter date.

On the first purchase, the estate should be allowed a credit of $5,185, representing the investment of September 24, 1904, with interest thereon at six per cent until December 8, 1905, which interest amounts to $375.04; the total credit on account of such investment and interest being $5,560.04. On account of the purchase of lots from Cornet & Zeibig June 3, 1905, the defendant's estate should be allowed a credit of $1,600, representing the investment on that date, with interest thereon at six per cent until December 8, 1905. This item of interest amounts to $49.33 and the total credit for both this investment and interest is $1,649.33.

The court allowed defendants' estate a credit of $90 for taxes paid on the lots owned by Dr. Bernays on Grier avenue in 1904. It is urged this was error for the reason it does not appear Dr. Bernays paid any taxes whatever thereon. It is true there is no direct evidence to this effect, but the inference that he did pay the taxes for 1904 is abundant if not quite irresistible. Plaintiff himself testified that the taxes would amount to as much as $90 for that year and the proof all goes to the effect that Dr. Bernays exchanged the property for that on Broadway December 8, 1905, clear of all taxes save the current taxes of 1905. It appears, then, that he owned the Grier avenue lots purchased from Mr. Rowe at the time the current taxes were due and payable in 1904 and that a year thereafter he disposed of the same free from all taxes save those of 1905. In this view, we believe it was entirely proper for the court to allow the estate a credit of $90 for the current taxes of 1904.

There is no direct proof as to what consideration Dr. Bernays received for the Grier avenue lots, except that it is conceded it consisted of the equity in the property numbered 18 South Broadway, and this equity is shown by the overwhelming evidence to have

been at that time of the value of $10,000. It seems the parties in exchanging the property placed values thereon which would reveal a greater consideration. The deed from Dr. Bernays conveying the Grier avenue lots recited a consideration of $15,000 and that from the party conveying the Broadway property to him recited a consideration of $40,000. Both properties were conveyed subject to the current taxes of 1905 and the Broadway property was incumbered, too, by two deeds of trust in the total amount of $25,000. From this it would appear, prima facie, that the consideration in both deeds suggests that Dr. Bernays received $15,000 for the Grier avenue lots. Plaintiff insists that on this showing the deeds are conclusive as to the amount received by Dr. Bernays and insists, too, that he should participate to the extent of one-third of the profits accruing on the basis of a sale of the Grier avenue lots at $15,000. We do not concur in the view that the recitals as to the consideration in these deeds are conclusive. There is no contractual stipulation contained in the deeds with respect to the consideration passed and they are not immune from parol explanation on that account. Indeed, the recitals of these deeds amount to no more than the usual receipt clause as to such matters. Neither is there an attempt here to defeat or dispute the operative effect of the deeds as conveyances, but instead the only matter with which the court is concerned is the precise consideration which Dr. Bernays received for the property, to the end that his estate should account therefor. In such circumstances, it is entirely competent to show by parol that the actual consideration received was different from that mentioned in the deed. [See Bobb v. Bobb, 89 Mo. 411, 4 S. W. 511; Wishart v. Gerhart, 105 Mo. App. 112, 78 S. W. 1094; Edwards v. Latimer, 183 Mo. 610, 624, 82 S. W. 109.] The court did not err in receiving testimony as to the actual value of the equity which Dr. Bernays received

for the lots, and this is shown quite conclusively to be only $10,000. The court properly charged defendant's estate with the receipt of $10,000 on account of the sale of the lots. Against this it should receive a credit of $5,185, invested September 24, 1904, with six per cent interest thereon until December 8, 1905, amounting to $375.04, or a total amount of investment and interest of $5,560.04. A second credit should be allowed, too, of $1,600, invested in lots purchased from Cornet & Zeibig June 3, 1905, with interest thereon at six per cent from that date until December 8, 1905, amounting to $49.33, or a total on account of such investment and interest of $1,649.33. A further credit of $1,788.66 should be allowed the estate on account of expenditures for improvements as of date December 8, 1905, for the reason there is no proof that the money was paid out for such improvements prior to that date. A credit, too, of $90 for the taxes of 1904 should be allowed. After deducting these several credits from $10,000 received by Dr. Bernays a balance of $911.97 is ascertained and plaintiff should recover one-third of this amount, together with interest thereon at six per cent from December 8, 1905, until paid. On the date of the trial, April 15, 1910, the court found plaintiff was entitled to recover $281.81, with interest to the amount of $75.19 making a sum total of $357, whereas the amount should have been $303.99, together with interest thereon at six per cent from December 8, 1905, to the date of that judgment, April 15, 1910, amounting in all to $383.34. For the error in allowing a credit for interest from September 24, 1904, on the $1,600 item above pointed out, the judgment should be reversed and the cause remanded with directions to the circuit court to restate the account as above set forth and enter its decree for plaintiff accordingly for the amount of $383.34 as of date April 15, 1910, with interest thereon at six per cent

thereafter and until paid, and that said judgment be certified to the probate court for allowance against the estate. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.