Hollocher, et al., v. Hollocher, et al.

JOSEPH C. HOLLOCHER, *et al.*, Plaintiffs in Error, *vs.* MICHAEL
L. HOLLOCHER, *et al.*, Defendants in Error.

| 62 | 267 |
|----|-----|
| 54a | 642 |
| 62 | 267 |
| 56a | 386 |
| 62 | 267 |
| 127 | 519 |
| 62 | 267 |
| 144 | 109 |

1. *Marital conveyances—Undue influence, what not.*—Where property is accumulated in a great degree by the superior intelligence and active energies of the wife, and being thereto induced by his confidence in her, the husband makes to her a deed of his property, and it appears that the wife's influence, although great, was salutary and wholesome, and not exerted for fraudulent or selfish considerations, the deed will not be set aside on the ground of "undue influence," such as the law forbids. And it is immaterial as touching the legal rights of the parties in such case, that the confidence of the husband may have been misplaced.

2. *Deeds—Consideration clause—Parol evidence varying and contradicting, when proper.*—The consideration clause in a deed is always open to explanation or contradiction ; certainly so, except as between the parties or their privies, where plaintiff seeks to set aside his own deed for lack of a consideration therein expressed to have been paid ; and so bases his action on his own fraud ; and subject to the exception, that the consideration clause, for the purpose of giving effect to the operative words of a deed, may be regarded as conclusive.

3. *Conveyance—Consideration expressed in deed—Impeachment of.*—Where suit is brought by the maker to set aside a deed on the ground that no consideration whatever passed, and that the same was obtained by fraud and undue influence, plaintiff cannot insist, that the consideration, expressed in the deed, was unconscionable, and cannot be attacked by parol evidence.

*Error to St. Louis Circuit Court.*

*P. E. Bland & A. McElhinney,* for Appellants, cited
Willan vs. Willan, 2 Dow., 282 ; Clarkson vs. Hanway, 2 P.
Wm., 203 ; Watt vs. Grove, 2 Sch. & Lef., 501 ; Peacock vs.
Monk, 1 Ves. Sen., 127 ; Id., 3 Starkie, 1004 ; Belden vs. Seymore, 8 Conn., 314 ; Washb. Real Prop., 328–9 ; Kerr Frauds
& Mist., 191 ; Schunerhorn vs. Vanderheyden, 1 John., 139 ;
Howes vs. Barker, 3 Johns., 508 ; Mangley vs. Hauer, 7 Johns.,
341 ; Betts vs. Union Bank of Maryland, 1 Har. & Gil., 200 ;
1 Phil. Con., 426 ; Hildreth vs. Lands, 2 John. Ch., 35 ; Henders' Lessee vs. Longworth, 11 Wheat., 214 ; Freland vs. Eldridge, 19 Mo., 325 ; Cadwalader vs. West, 48 Mo., 493 ; Kerr
Frauds & Mist., 193 ; Dent vs. Beaumont, 4 Milne & Cr., 277 ;
Peel vs. ——, 16 Ves. Jr., 157 ; Proctor vs. Robinson, 35 Beav.,
29 ; Coulson vs. Allison, 2 De G. F. & J., 525 ; Price vs.
Price, 1 De G. M. & G., 308.

*H. D. Laughlin*, for Respondents, cited Rackhill vs. Spraggs, 9 Ind., 30 ; Meeker vs. Meeker, 16 Conn., 383 ; Jones vs. Jones, 12 Ind., 386 ; Fontaine vs. Bank, 57 Mo., 552 ; Wheler vs. Billings, 38 N. Y., 263 ; McCrea v. Purmont, 16 Wend., 460.

NAPTON, Judge, delivered the opinion of the court.

This action was brought by the adult children of Michael and Mary Hollocher against the minor brothers and sisters of the plaintiffs, and the mother of them all, and her trustee, Ch. F. Blatteau, to have certain deeds made by the father, Michael, and his wife Mary, to one of the plaintiffs, and by said plaintiff to Blatteau, for the sole use and benefit of Mary, the mother of all the plaintiffs and defendants, except said trustee, set aside and declared void.

The allegations in the petition are, that Michael Hollocher, who was dead before this suit was brought, was addicted to the use of ardent spirits to such extent as to render him infirm and weak of mind, and unfit to manage his own affairs, because of habitual inebriation ; that his wife, the said defendant Mary exercised great influence and control over him, and fraudulently contrived to secure all the real estate of said Michael, and also the personal estate, to her own separate and sole use, and, to effect this, persuaded the said Michael to execute a certain deed bearing date the 17th of October, 1863, conveying all the real and personal estate of said Michael to their son, Joseph Hollocher.

The plaintiffs aver that the consideration expressed in said deed was purely nominal and fictitious, and grossly inadequate ; that the grantee, Joseph, was absent from the State at the time, and knew nothing of the execution of said deed, and paid no consideration for the same ; that at the request of the grantors, the said grantee, Joseph, came back to this State and undertook the management of his father's business, and, being ignorant of the fraudulent designs of his mother, accepted and held under said deed, and held the property for the benefit of the family, and to save the property from the mismanagement of his father ; that his mother requested him

to convey this property to Blatteau in trust for her sole and separate use, claiming that the same was to be for the benefit of all the family, and ultimately to go to all the children. This representation is alleged to have been false and fraudulent, and contrived for the purpose of securing the whole property to herself. It was averred. that said Joseph, the plaintiff, confiding in these representations, conveyed the property to the trustee. Blatteau, for the sole and separate use of the defendant, Mary. The consideration named in all the deeds is averred to have been nominal, and the deeds are asked to be set aside on the ground of fraud and undue influence of Mary upon her husband, Michael.

The answers, both of the trustee, Blatteau, and the defendant, Mary, etc., were denials of every allegation in the petition. The case was referred, and the referee took all the testimony in the case, which is voluminous, and recommended the dismissal of the petition. This report was confirmed, exceptions taken, and an appeal granted.

The evidence clearly established the following facts:

Michael Hollocher and his wife had by their joint labor, in the course of 25 years, accumulated a property estimated at about $20,000 in value. This was done in various pursuits, first, by the profits of a dairy farm in the vicinity of this city, next, by a grocery story on the Gravois road, and lastly, by a large brewery in Manchester. In all these employments Mrs. Hollocher was not merely assisting, as is most usual in this country, by the faithful discharge of those domestic duties which naturally devolve on a wife, but was an active participant in all the labors of the dairy, the grocery and the brewery.

Previous to 1860, Michael Hollocher seems to have been rather an intemperate man, but not so much so as to excite particular observation; but after that date, and especially after his removal to Manchester, he became an habitual drunkard. There were intervals, of course, during which he was entirely competent to transact business, and there were also protracted fits of intoxication, in which he was subject to imposition.

From the first period of the married life of these people, of which the record gives any information, the husband had great confidence in his wife's judgment, and scarcely made any movement without consulting her. She seems to have been the active and ruling partner, but their relations were always harmonious, and the deference of the husband was based on a consciousness of her superior discretion.

In 1863, Michael Hollocher consulted his wife as to the policy of transferring his estate to her. He had made some trades in his " sprees," as he called them, which subsequent reflection satisfied him were injudicious. The husband then went to St. Louis to see Mr. Blatteau, a friend and an acquaintance, and informed him of his wish to transfer all his estate to his wife.

It is not clear, in the recollection of Mr. Blatteau, whether Mrs. Hollocher accompanied her husband in this visit; Michael Hollocher was, however, then sober. Mr. Blatteau told him that the law did not allow such conveyances from a husband to his wife, and that he had better convey to some third person, and then have a conveyance from such third person to his wife, or to a trustee, for her use. After consultation with his wife, it was agreed that their son Joseph should be selected as the grantee, and ultimately Mr. Blatteau was requested to have a conveyance drawn up to this son Joseph, who was then about 21 years old. The deed was accordingly prepared, conveying all the property of Hollocher and his wife to their oldest son, Joseph, who was not in the county at that time. Mr. Blatteau states, that at the execution of the deed, Michael Hollocher was sober.

Joseph was then sent for, and he came over from Illinois and took possession under this deed. He married shortly afterwards and brought his wife to his father's house, but the father became dissatisfied with the condition of affairs, and requested his wife to get the other deed, which would place the property entirely under her control. Joseph, the son, and grantee in the deed, consented to this, and then executed the two deeds to Blatteau, conveying the entire property to

this trustee for the sole and separate use of his mother. These deeds were executed in a few months after the first deed.

There was no money paid for the first deed, and none for the second and third, except that, before the son would execute these last deeds, his mother paid to him $2,000, partly to pay off mortgages, and partly for services he had rendered after his removal to Manchester. The first deed to Joseph Hollocher was executed in October, 1863, and the deeds from Joseph to the trustee were executed in May, 1864. The last two deeds conveyed the property to Blatteau as trustee for the sole and separate use of Mary Hollocher, the wife of Michael.

Michael Hollocher lived to 1872, and shortly after his death, in the early part of that year, this suit was instituted.

We shall dismiss the point in regard to fraud and improper or undue influence with but few remarks.

There is no evidence of any selfish or fraudulent designs of the mother of these plaintiffs, or of any undue influence being exercised by her. That she had always a great influence over her husband is apparent, but that this influence was ever exerted, except for his benefit, and the benefit of their children, does not appear. On the contrary, it clearly appears that this influence was a salutary and wholesome one, and was induced by no fraudulent or selfish purposes. The property of the husband seems to have been acquired mainly by the superior intelligence and active energies of the wife; and this seems to have been fully appreciated by the husband, who, conscious of his weakness, was anxious to place it in such a condition that his follies should not deprive her and their children of the benefits of this estate.

There is no question in regard to creditors. And it seems clear that it was the design of the husband to invest this property in his wife, or, as he expressed it, "to sign it over to his wife." He had the utmost confidence in her, and their marital relations were never disturbed, notwithstanding his intemperate habits. He did not doubt that she would carefully guard the interests of their children. He reposed entire con-

fidence in her discretion. Whether it would be a wise or unwise confidence, is not a matter for our consideration. That he wished his wife to have the sole management of his estate, is clearly proved, and that he had sufficient confidence in her to assume that such power would not be exercised prejudicially to the large family of children they had, is equally clear. The deeds in question were therefore made in conformity to his wishes, and the objection of undue influence has no support in the testimony, unless the deference of a husband to the superior intellect of the wife, and to her superior discretion in affairs that concerned both and the children, is to be regarded as undue influence.

There might, undoubtedly, be a difference of opinion as to the wisdom of such an absolute conveyance of a man's estate to his wife ; but with that courts have no concern. In the present case there is nothing to show that the confidence of the husband in his wife was misplaced ; but if there had been, the result could not be changed. Michael Hollocher had an undoubted right to do with his property as he pleased, provided he was of sound mind at the time, and not under such influences as the law forbids.

So far the case seems clear of all difficulty on the evidence submitted on both sides of this family controversy. Two points are, however, made by the counsel in this court, which we will proceed to notice.

The first position for the complainants is, that the consideration of $4,000, expressed in the deed to Joseph, was an inadequate one, and so grossly inadequate as to shock the conscience and justify a court of equity in concluding the deed to have been fraudulent, and an imposition upon the grantor. This position is a strange one, seeing that in fact, upon the evidence introduced by plaintiffs, no consideration at all, of any pecuniary value, was paid, and that the plaintiffs' evidence was introduced to establish this fact, and, beyond doubt, did establish it. Why then refer to the equity rules about inadequacy of consideration, when it is plain that there was none, either valuable or good, passing from the grantee to the grantors of the first deed.

But this position is merely preparatory to the second, which is, that the consideration clause in a deed cannot be explained by parol evidence. And upon this point various authorities are referred to, both English and American. It is especially insisted, that upon the precedents, in either country, the character of the consideration expressed in the deed cannot be varied, and, as a monied consideration was expressed in the deed from Michael and his wife to their son Joseph, the real object of the conveyance could not be explained.

This point might be considered as settled by the recent decisions of this court in Fontaine vs. Boatmen's Sav. Inst. (57 Mo., 561), where the precise question arose. In that case a nominal consideration of $2,000 was stated in the deed to Fontaine, but the proof showed that Fontaine was a mere conduit to pass the title to a third person for the use of the grantor's wife, and, of course, paid nothing for the deed. This evidence was admitted, and the court observed in the opinion delivered, that " the consideration clause in a deed has only the force and character of a receipt, and is always open to explanation and contradiction."

In Henderson vs. Henderson's Ex'rs (13 Mo. 151), it was observed, " how far the ordinary clause in a deed, acknowledging the receipt of the purchase money, ought to preclude all parol evidence to show the real consideration, either as to amount or character, is a question upon which the decisions have not been uniform. Where the action is such that the amount of the purchase money paid becomes material, and the deed is not otherwise called in question, a majority of the American cases will be found in favor of the admissibility of such evidence. Such proof has usually been allowed in actions for the purchase money, though in the courts of North Carolina a different practice has been rigidly adhered to. The purpose, really aimed at by the testimony in this case, was to show a 'resulting trust in the grantor, and thereby defeat the action entirely. This is a privilege, which strangers, whose interests are affected by the deed, are allowed, but be-

tween parties and privies such testimony is inadmissible. Parties and privies are not allowed to allege their own fraud as a ground for varying or avoiding a deed."

The cases of Dickson vs. Anderson & Thompson, (9 Mo., 156), and Rabsuhl vs. Lack (35 Mo., 316), maintain the same position.

This subject was elaborately considered by Judge Cowan in McCrea vs. Purmont (16 Wend., 465). He shows from an examination of the English and American cases, that the tendency of the latter was to admit parol explanations of the consideration clause in a deed. His observation was, that, "looking at the strong and overwhelming balance of authority, as collectable from the decisions of the American courts, the clause in question, even as between the immediate parties, comes down to the rank of *prima facie* evidence, except for the purpose of giving effect to the operative words of the conveyance. To that end, and that alone, is it conclusive."

How then can Joseph Hollocher, the grantee in the deed from his father and mother, undertake to set aside the deed, on the sole ground that he paid no consideration in money for it, though the deed so declared? He was a party to it, and if there was fraud in it, he was a participant in the fraud, and, by accepting it, is estopped from asserting the fraud. But this inquiry only leads us back to the question of fraudulent influence, of which there is no evidence. The deed to Joseph was made in accordance with the advice of Blatteau, with a view to invest the title in the mother of Joseph and wife of the grantor. We are unable to see, therefore, how the second position assumed in the argument here could avail the plaintiffs, if conceded to be law. It would simply preclude the plaintiffs from evidence tending to impair the validity of the conveyance to Joseph. But the object of the plaintiffs is to impeach and destroy the validity of the conveyance, upon the validity of which the subsequent conveyances of Joseph to his mother's trustee were based, and the exclusion of all testimony relating to the real character of the transaction would then bring us back to the first point, that

the consideration expressed in the deed was inadequate, and therefore evidence of fraud or imposition. But the evidence was counteracted by the evidence of plaintiffs, that no consideration was in fact paid, and which evidence was in support of the allegations in the petition, and the only ground, upon which the deeds are sought to be avoided, are fraud and undue influence of the wife. To rely upon the inadequacy of consideration, as expressed in the deed, is therefore, to go back upon the allegations of the petition, which distinctly aver that no consideration whatever was paid, and which seek to set aside the deeds solely upon the ground of fraud and undue influence.

The judgment of the circuit court is affirmed. The other judges concur, except Judges Vories and Hough, who are absent.