## RONEY v. HEALY.

1. CONTINUANCE—ABSENCE OF WITNESS—MOTIONS.

   It was not reversible error, on the trial of a cause after defendant had completed his proofs and plaintiff moved to adjourn the case in order to obtain the testimony of a witness who had been served with a subpœna, and had left the city to return on the following day, to deny plaintiff's motion and submit the case to the jury, the court not being advised when the absent witness could be produced and no definite time being fixed by the motion, and it appearing that the testimony of such absent witness would not have affected the disputed question at issue.

2. SAME—APPEAL AND ERROR—REFUSAL TO ADJOURN CAUSE.

   The refusal to continue the case being justifiable, it was not erroneous to deny a motion for a new trial.

3. BROKERS—COMMISSIONS—CONTRACTS.

   Where defendant claimed that by agreement with his broker he was to pay 1½ per cent. commission on money obtained for his use, exclusive of certain funds required to cancel a mortgage on the premises in question, and plaintiff claimed that he was to have his reasonable commission on the entire loan secured, it was not erroneous to submit to the jury the question of special contract.

   MOORE, C. J., and STEERE and BROOKE, JJ., dissenting.

Error to Wayne; Mandell, J. Submitted November 7, 1911. (Docket No. 56.) Decided May 3, 1912. Rehearing denied July 22, 1912.

Assumpsit by William E. Roney against Daniel J. Healy for services rendered as defendant's broker in procuring a loan. A judgment for plaintiff for less than the amount claimed is reviewed by him on error. Affirmed.

*May & Dingeman* and *Daniel P. Cassidy*, for appellant.

*Merriam, Yerkes & Simons* and *George A. Kelly*, for appellee.

OSTRANDER, J.  The action is assumpsit; plaintiff having declared upon the common counts and filed a bill of particulars of his demand, reading:

> "To the reasonable value of services rendered by plaintiff to defendant in procuring a loan for defendant of $135,000 _____$5,000."

When the cause came on to be tried, plaintiff was sworn as a witness in his own behalf, and while giving his testimony his counsel asked counsel for the defendant for a certain bill, rendered by plaintiff to defendant, and was informed:

> "We have not it.  I think Mr. Hally has those papers; I understand he has."

Thereupon counsel for plaintiff said:

> "Mr. Hally is out of town; but Mr. Hally was subpœnaed by us Saturday, and we knew of no reason why he should not be here until yesterday afternoon at 5 o'clock, and he called me up to my house, and stated that he overlooked the fact, when the papers were served upon him, that he had to be in the Supreme Court today, but he was going to telegraph to Judge Murphy, the presiding judge, as to that fact.  So I said I would make that fact known to the court, and while I did not think we needed him until the rebuttal in any event, but I did not believe there will be any question but what Mr. Healy will admit the copy of the paper."

So far as the record discloses, this was the first intimation the trial judge had that Mr. Hally was subpœnaed, or was expected to be called as a witness for either party; and when the foregoing statement was made by counsel it was not intimated that the trial should be postponed because of the absence of Mr. Hally, or that it made any material difference to plaintiff whether Mr. Hally attended as a witness or not; and it should be also further stated that it was not until defendant rested his case that counsel for plaintiff again called the attention of the court to the matter of Mr. Hally's absence in the manner indicated in the opinion of Mr. Justice MOORE.  It was then for the first

time there was any statement or discussion of the testimony which it was expected Mr. Hally would give, if he were present. The judge was not advised concerning the time when Mr. Hally could be produced in court, and no continuance or postponement to any particular time appears to have been asked for by counsel. The statement in the opinion of Mr. Justice MOORE, that while at Lansing Mr. Hally "wired the Wayne circuit court that he had been regularly subpœnaed in the case at bar, and would return to Detroit on October 12, 1910," is misleading. From it the inference might be drawn that the trial judge was informed that Mr. Hally would return, or supposed that he would return, to Detroit, so that he might give his testimony on October 12th. But the trial judge was not the presiding judge; and it does not appear that the trial judge knew anything about when Mr. Hally was expected to return to Detroit.

Let it be assumed that the trial judge was properly moved to postpone or continue the case for some time; that he made a ruling upon the motion; and that plaintiff has a proper exception thereto. Still it does not appear that the ruling was wrong when it was made. The court was called upon to exercise a sound discretion; in view of the facts which were disclosed, I think he made a proper ruling, and, if the ruling which was made was proper when it was made, I do not understand that it can have grown into reversible error by reason of the refusal to grant a new trial. It was a ruling reviewable on error (*Geddis* v. *Wayne Circuit Judge*, 151 Mich. 122 [114 N. W. 874]), and unless there was a clear abuse of discretion, the ruling of the trial court must stand. *McNaughton* v. *Evert*, 116 Mich. 141 (74 N. W. 486).

Considering upon their merits the application to postpone and the refusal to grant a new trial, I think the court committed no error in refusing the postponement and in refusing the new trial, because it was not then, and is not now, made to appear that Mr. Hally would or could give any testimony concerning a material disputed

issue of fact. I shall not attempt to set out in this opinion the portions of the record which lead me to this conclusion. It is, in my judgment, sufficient to say that the employment of the plaintiff by the defendant as a broker to procure a loan of money upon the security offered is, upon this record, an undisputed fact. It is undisputed that plaintiff performed services in that behalf. Indeed, both facts are admitted, which dispenses with the necessity for any proof. It is for the reasonable value of services so rendered that plaintiff seeks to recover, and concerning which he took the opinion of a jury. The extent and quality of the services so performed are matters about which Mr. Hally is not informed, as his affidavit discloses. That plaintiff was greatly disappointed in the verdict is not a reason for permitting him to take the opinion of another jury.

The circuit judge was not in error, in my opinion, in submitting to the jury the question whether, by the agreement of the parties, plaintiff was to be paid for securing a loan of $60,000, the sum actually lent to and received by defendant, or for $25,000, on the ground that $35,000 of the $60,000 was used to pay a mortgage upon the property offered as security. Unless there was an agreement to the contrary, plaintiff should have been paid for the money he secured, regardless of the use to which defendant devoted it.

The judgment should be affirmed.

McALVAY, BLAIR, STONE, and BIRD, JJ., concurred with OSTRANDER, J.

MOORE, C. J. (*dissenting*). Plaintiff is in the real estate business in the city of Detroit. Defendant conducts a store on Woodward avenue in Detroit. He had a 99-year lease of property on Woodward avenue, dated January 1, 1909, which required that the erection of a building must be commenced within two years from the date thereof.

170 MICH.—4.

It is the claim of the plaintiff that he was employed by defendant to secure for him a loan of sufficient money to enable him to erect a very expensive building on the Woodward avenue property. Mr. Healy was the owner of some valuable real estate on Broadway, in Detroit, upon which there was a mortgage. It is the claim of the plaintiff that he secured for defendant $60,000 upon the Broadway property and $75,000 upon the Woodward avenue property, including the lease. This suit was brought to recover for the services rendered by the plaintiff, which he claims entitled him to a judgment for upwards of $3,000. He obtained a verdict and judgment for $800. He has brought the case here by writ of error.

The record discloses that the parties were brought together in the first instance by Mr. Hally, an attorney at law, living in Detroit. We have already stated in a general way the claim of the plaintiff. It should be stated further that he claimed he was employed as a broker to procure money; that he was the procuring cause of the loans, and should be paid as a broker. The claim of defendant may be gathered from the contention of his counsel in the brief.

As to the loan upon the Broadway property, counsel say:

"The next proposition was to obtain a loan on the two properties separately. Roney said he would take the matter up with the banks. He did not say that he went to the Detroit Savings Bank; and defendant had spoken to one of the directors some time before in regard to a loan, and was informed on the 16th or 18th of January that the bank passed favorably on the proposition. Defendant procured this loan himself."

As to the loan on the Woodward avenue property and lease, counsel say:

"Defendant then went to the People's State Bank with Mr. Roney and had a talk with Mr. O'Brien, vice president of the bank, and secured a loan of $75,000 on the building and 99-year lease of the Woodward avenue property; and Mr. O'Brien testified that he would not have

made the loan, if Mr. Healy had not come in and given him the necessary information. Defendant testified that he himself did most of the work of getting this loan."

We again quote from the brief:

" It is not denied by defendant that services were rendered by plaintiff in this matter; but it is claimed that such service was not worth anything like the charge made by plaintiff; that he was not the procuring cause of the loans; that he did not furnish the clients from whom the loans were procured; and that, in fact, he acted only as a go-between in the entire matter."

The testimony of the parties was in sharp conflict. The plaintiff gave testimony tending to support his claim. The defendant denied some of his testimony. We quote some of the testimony of defendant:

"*Q.* You stated on your direct examination that you had gotten this loan at the Detroit Savings Bank?
"*A.* Yes, sir.
"*Q.* You had gotten it upon this statement?
"*A.* I got the loan from the Detroit Savings Bank, I feel confident, because of the way Mr. Delamater treated me; and I put it up to him entirely myself, and he told me—I put it up to Mr. Delamater, the statement of what I wanted. I wanted a loan on the property on Broadway.
\*   \*   \*

"*Q.* You stated in your direct examination that the procuring of the loan from the Detroit Savings Bank was upon your own statement?
"*A.* No; I say I procured the loan from the Detroit Savings Bank from my own personal address to the president of the bank.

"*Q.* You state now that the $60,000 was procured entirely upon your own efforts at the Detroit Savings Bank?
"*A.* Yes, sir.

"*Q.* So that, as far as that work is concerned, you do not consider that you owe Mr. Roney anything?
"*A.* I would not say that.

"*Q.* If he did not procure the loan for you, you do not owe him anything.
"*A.* No legal obligation.

"*Q.* No legal obligation to pay for anything in procuring the $60,000 mentioned?   (Objected to.)

"*The Court:* I will exclude it as being incompetent.

"*Mr. May:* Note an exception. * * *

"*Q.* You knew after Mr. Roney had been working on it for a month?

"*A.* And had succeeded in doing nothing and jeopardized my proposition, and nearly ruined me, jeopardized my proposition—

"*Q.* Explain how.

"*A.* Because he had no standing in the community, and I was told that he had no standing, and he jeopardized my proposition; and I was willing to be fair in the matter.

"*Q.* Had no standing in the community? * * *

"*Q.* You owe him nothing in connection with the procurement of the $60,000 loan in any event?

"*The Court:* That question has been asked and answered, and I will exclude it.

"*Q.* We come to the $75,000 loan; you don't owe him anything for his services in that direction?

"*A.* Certainly not.

"*Q.* Those are the only two transactions that Mr. Roney has had any dealings with in connection with your property?

"*A.* He acted as messenger for me, I would call it; he went along with me, and I cannot take up any man's time without paying something for his trouble.

"*Q.* You say he acted as messenger; is that the way you want to compensate him—Mr. Healy, you want to compensate him as a messenger?

"*A.* No; I will not say it.

"*Q.* You say he acted as a messenger?

"*A.* He acted as something; I don't know what.

"*Q.* Did you authorize Mr. Hally to procure his services to obtain this loan for you?

"*A.* No, sir.

"*Q.* You discussed the question of compensation in Mr. Hally's office after the loan had been procured?

"*A.* Not after the loan had been procured.

"*Q.* After the work was done?

"*A.* No; not after the work was done.

"*Q.* You have taken the position that you never authorized Mr. Hally to employ Mr. Roney?

"*A.* I had not authorized him to employ Mr. Roney; I authorized him to do as he pleased. I didn't pick out any man at all.

"*Q.* I am not saying you picked out any man.

"*A.* I didn't know Mr. Roney.

"*Q.* I ask you and I want you to state your position clearly to the court and jury as to whether you are repudiating the services of Mr. Roney, because you did not authorize the employment.    (Objected to.)

"*The Court:* I will exclude it.    Note an exception."

We have already stated that these parties were brought together by Mr. Hally.    The record shows that service of a subpœna to attend as a witness upon the trial was served upon him October 8th.    We quote from the brief of counsel, which we think is sustained by the record:

"The plaintiff subpœnaed Mr. Hally on October 8th to appear as a witness in his behalf on October 10, 1910, at which time the trial of this cause was commenced.    The testimony in the case was closed on October 11th, at about 2:30 p. m.    Mr. Hally, as corporation counsel of the city of Detroit, was obliged to be in the Supreme Court at Lansing on October 10th, to argue the case of the *People* v. *C. H. Little & Co.*, and on October 11th to argue the case of *J. L. Hudson Co.* v. *Cameron Currie*, and owing to this fact was unable to respond to the subpœna.    While at Lansing, he wired the Wayne circuit court that he had been regularly subpœnaed in the case at bar, and would return to Detroit on October 12, 1910."

We now quote from the record:

"*Mr. May:* I don't think the matter should be submitted in justice to my client; the matter should be submitted without the testimony of Mr. Hally.

"*The Court:* I see the point you desire to offer testimony on.    I will say this:    There is, on the question of consideration, read into a contract, even though it is not stated, that if the services are rendered on one part and accepted on the other there is read into the contract that the services should be paid for at the rate of what such services are reasonably worth, and, if Mr. Hally were to come here and state on behalf of the plaintiff in this case that he hired the plaintiff, it would not make any difference; so I think it immaterial.    According to your theory, Mr. Healy accepted the services of the plaintiff, and if he accepted them it would not make any difference whether there was a contract of hire or not; so I cannot see that

the testimony is material.  I shall charge the jury that, and that obviates the necessity of calling Mr. Hally.

" *Mr. May:* All I want your honor to tell me is what you want me to do; but I want to submit this proposition. It has been testified by Mr. Healy that he did not authorize Mr. Hally to employ Mr. Roney.  All he said was he didn't know Mr. Roney; and all he told him was to go ahead and do what he thought best, and, if he thought best to secure the services of Mr. Roney, that is all that was necessary.

" *Mr. May:* It bears upon the credibility of Mr. Healy's testimony.

" *The Court:* That is an immaterial matter, and, if it had a tendency to contradict it, I would exclude it, because it would not be impeachment on a material matter. I think you had better proceed.

"*Mr. May:* We expect to prove by Mr. Hally that the time of the conference, at the time that $1\frac{1}{2}$ per cent. was discussed, was just prior to the time that the Detroit Trust Company had indicated an unwillingness to make the loan.

"*The Court:* They all agree to that; it was during the pendency of the negotiations with the Trust Company. You offer it, and the other side admits it.

"*Mr. May:* Your honor directs us to go to the jury.

"*The Court:* I think you had better.

"*Mr. May:* I take an exception."

Later a motion for a new trial was made, based upon the record and upon affidavits, among others, the affidavit of Mr. Hally.  This affidavit reads, in part, as follows:

" P. J. M. Hally, being duly sworn, deposes and says that he is corporation counsel of the city of Detroit; that on the 8th day of October, 1910, he was duly subpœnaed as a witness to give evidence in the above entitled cause on behalf of said plaintiff; and that, owing to the fact that he was called to Lansing to argue the case of *People* v. *C. H. Little Co.*, on Monday, October 10th, and the case of *J. L. Hudson et al.* v. *Cameron Currie*, on Tuesday, October 11th, before the Supreme Court, he was unable to respond to said subpœna; that while at Lansing he wired the circuit court for the county of Wayne to the effect that he had been regularly subpœnaed by the plaintiff in said cause, and that he was necessarily in Lansing

to argue the cases above mentioned; and that he would return to Detroit on October 12, 1910."

"Affiant further says that he was present and heard considerable of the negotiations and conversations between the plaintiff and defendant in this cause, relative to the matters in controversy, and that if placed upon the witness stand he would have testified as follows:

" 'That Daniel J. Healy was, during the latter part of the year 1909 and the early part of the year 1910, a client of this affiant, and the said Healy consulted this affiant with reference to procuring a loan, for the purpose of erecting a building on the east side of Woodward avenue, between Grand River avenue and John R. Street, upon the property then held by the said Healy under a 99-year lease; that this affiant investigated said matter and made some efforts towards procuring said loan, but found that the proposition would necessitate the giving of more time to the matter than this affiant could give, that this affiant explained to the said Healy his inability to give the proper attention to the matter, and advised the said Healy to procure the services of a broker experienced in matters of that character, and thereupon recommended William E. Roney, and was authorized by said Healy to employ the said Roney as a broker who would likely be able to procure the necessary funds for the said enterprise. This affiant further says that he employed said Roney, as requested by the said Healy, and arranged a conference between the said Healy and said Roney, and at which conference the employment of said Roney by this affiant was duly confirmed and approved by said Healy.   *   *   *'

"This affiant further says that it was understood between the said Roney, Healy, and this affiant that the said Roney had absolute charge of the matter of procuring said loan, and that this affiant, during the various conferences referred to, was never informed or given to understand by the said Healy that the said Roney was acting in any other capacity than that of a broker solely in charge of procuring said loan, and not in the capacity of an assistant or helper to this affiant or said Healy. * * * And in the presence of Healy, Roney, and this affiant, the question of the said Roney's compensation was broached; that said Roney then stated to the said Healy that his compensation would be at the rate of $1\frac{1}{2}$ per cent. upon the total sum secured; that, in addition to said compensation, said Roney stated at said conference that he was making said rate with the understanding that he was to be given the fire insurance business of the said Healy;

that at said conference the fees and expenses of the Detroit Trust Company were also discussed and explained by the said Roney to the said Healy.  *  *  *

"This affiant further says that upon a certain occasion, the exact date this affiant cannot now recall, the said Roney came to the office of this affiant, while this affiant was in conference with said Healy in connection with other matters relating to the said building project, and called this affiant and said Healy from the inner office, and stated substantially:

"'Well, I have secured you $60,000 from the Detroit Savings Bank on the Broadway property; and I am now going to apply to the Wayne County Savings Bank for the balance.'

"That the balance needed was then discussed, and seventy or seventy-five thousand dollars was deemed sufficient by both this affiant and said Healy to successfully carry through such project.

"This affiant further says that from an intimate knowledge of the transaction that said Roney conceived and formulated the various plans by which the several financial institutions in the city were solicited with a view to making said loan, and further says, upon information and belief, that it was due to the efforts of said Roney, as a broker, that both the loan of $75,000 on the Woodward avenue property and the loan of $60,000 on the Broadway property were procured."

The motion for a new trial was overruled.

This brings us to the question of whether the court erred in refusing to continue the case from half past 2 o'clock, October 11th, until the 12th of October, when Mr. Hally might have testified as a witness. This court very properly hesitates to interfere with the discretion of a trial judge, exercised in the conduct of a trial, and will do so only when it is evident an injustice has been done.

In *Leach* v. *Railway*, 125 Mich. 373 (84 N. W. 316), this court declined to interfere, where the trial court refused to delay the trial from Thursday until the following Tuesday, to enable the defendant to procure a witness. The case differs greatly from the instant case. There the witness had not been subpœnaed; here he had been. There the delay asked was for several days; here it was

for only a short time.    Mr. Hally's affidavit cannot be harmonized with that part of the testimony of defendant which we have quoted.

The instant case shows, briefly stated, that plaintiff had caused a witness to be regularly served with a subpœna. The witness was an officer of the circuit court and of the Supreme Court.    His duties in the last-named court necessitated his temporary absence from the circuit court.    This fact was called to the attention of the presiding judge by the witness himself.    Counsel for plaintiff asked for a delay from Tuesday, at about half past 2 o'clock in the afternoon, until the following morning, to procure the attendance of the witness.    The important testimony in the case was given by the parties thereto.    It was in sharp conflict.    The testimony of Mr. Hally was material.    It probably would have been decisive in favor of the party which it tended to sustain.    Whether the claim of the plaintiff was urged as one upon the contract, or whether it be regarded as under the *quantum meruit* count, the testimony was material, because the parties were in disagreement about the extent and value of the services rendered.    It is not the attorney who is affected by the verdict, but the plaintiff, who in good faith did apparently all he could to procure the attendance of the witness. We are satisfied that in not being allowed to have the testimony of Mr. Hally he has been deprived of a substantial right without fault on his part, and that this is error.

Error is assigned upon the charge of the court.    We shall spend little time with this feature of the case.    In the colloquy between the judge and counsel, which we have quoted, there is a clear intimation of the view the judge had of the law of the case; but counsel preferred no written requests to charge, and we do not find from the record that the attention of the court was called to counsel's view of the law applicable to the case.    The fault of the charge, if any, is largely one of omission.    As there is to be a new trial for the reason already stated, we think counsel will have no reason to complain upon the second

trial, if, by proper written requests to charge, he will call the attention of the trial judge to the principles of law applicable to the case.

The question is raised as to whether plaintiff is entitled to a commission for the entire $60,000, loaned upon the Broadway property. Defendant insists the amount of the mortgage upon that property should be deducted. The record is clear that plaintiff was employed solely for the purpose of procuring sufficient money to enable the defendant to construct the Woodward avenue building. The holder of the mortgage on the Broadway property was not asking for its payment. The margin above the mortgage on this property and defendant's interest in the Woodward avenue property and lease were the securities plaintiff, acting for defendant, could offer to those proposing to make loans. The payment of the prior mortgage was a necessary incident to procuring any money on the Broadway property, to go into the building on Woodward avenue. We think the compensation of the plaintiff should be confined to the money which was raised to enable defendant to construct the Woodward avenue building, and should not include that used to pay the mortgage on the Broadway property.

Judgment should be reversed, and a new trial ordered.

STEERE and BROOKE, JJ., concurred with MOORE, C. J.