CHRISTOPHERSEN v. METROPOLITAN LIFE
INSURANCE CO.

1. INSURANCE—LIFE INSURANCE—PAYMENT OF PREMIUMS—DIRECT-
ED VERDICT.
   In an action on a life insurance policy where the policy
   contained a recital that the premium had been paid, but
   there was evidence that a letter was sent with the policy
   advising insured that the premium was not paid, and
   the application provided that there should be no liability
   on the policy until it was delivered and the first premium
   paid, the court erroneously directed a verdict on the
   ground that there was a completed contract.

2. TRIAL—DEPOSITIONS—ABUSE OF DISCRETION.
   In an action on a life insurance policy, it was an abuse of
   discretion for the trial court to refuse a continuance to
   allow defendant an opportunity to perfect the certification
   of depositions of witnesses necessary for its defense.
   MOORE and BIRD, JJ., dissenting.

Error to Muskegon; Sullivan, J. Submitted Octo-
ber 5, 1917. (Docket No. 42.) Decided December 28,
1917.

Assumpsit by Kittie Christophersen against the
Metropolitan Life Insurance Company on a policy of
insurance. Judgment for plaintiff on a directed ver-
dict. Defendant brings error. Reversed.

*Kleinhans, Knappen & Uhl,* for appellant.

*Cross, Vanderwerp & Foote,* for appellee.

MOORE, J. (*dissenting*). From a judgment upon a
directed verdict for the plaintiff this case is brought
here by writ of error. This suit is brought by Kittie
Christophersen, beneficiary named in the insurance
policy issued by defendant to Alda C. Christophersen,
her sister. Alda Christophersen was a domestic in

an apartment house in Chicago.  In January, 1916, she came to Muskegon on a visit.  While there upon January 29, 1916, she made application for a policy of insurance.  She returned to Chicago February 13th, in apparent good health.  February 22d, or early the next morning, she was taken sick.  On the 24th she was taken to Lakeside Hospital, where an operation for peritonitis was performed.  She died the next morning.  She was not married.  Her sister, the plaintiff in this case, told Dr. Johnstone at the hospital on the 24th that she was pregnant.  The day she died the policy of insurance was found.  It had been mailed to her from Muskegon, and was still in the envelope with a paper which read as follows:

"METROPOLITAN LIFE INSURANCE CO.,
    "Grand Rapids District.
*"Miss Alda Christophersen:*
    "Will you please send $8.79 and your policy will be paid for six months.
                        "Yours truly,
                                "J. M. BROUWER,
                            "Metropolitan, Muskegon."

The defendant offered evidence that only $3 had been paid upon the first six months' premiums, and that the first full premium had never been paid.  The court refused to admit testimony as to the nonpayment of the premium.  The defendant also offered testimony that no credit had been given for the premium; that neither of the agents who took her application extended credit, or ever claimed to her that they had authority to extend credit.  The court refused to admit this testimony.

The defendant's notice under the plea of the general issue set up as a defense that Miss Christophersen died as the result of the performance of an abortion.  To support this claim defendant took the depositions of Dr. Lillian Hobbs, Dr. A. R. Johnstone, and police officers Howard F. Ryley and William P. Swain.

The notice to take these depositions was given on October 16, 1916. They were taken on October 24th, and by mistake they were mailed in an envelope addressed. to the "County Clerk of Muskegon County, Grand Rapids." Upon learning of this fact defendant's counsel telephoned plaintiff's counsel, and upon his agreement had them sent direct from Grand Rapids to Muskegon, where they were filed October 31, 1916, the day before the trial commenced. When defendant sought to introduce them on the second day of the trial, objection was made because the notary before whom they had been taken had neglected to affix his seal of office or attach to the depositions a certificate of the county clerk showing his authority as a notary. The. court refused to admit the introduction of the depositions, and defendant then made a motion to continue the case to give an opportunity to send the depositions to Chicago to have the notary affix his seal and get the requisite certificate of the county clerk. This motion was also refused by the court. The court directed the jury to render a verdict for the plaintiff for the face of the policy, $500, upon which a judgment was entered.

There are many assignments of error which are grouped by counsel into two classes. The, first class applies to the court's action in refusing to admit any testimony in regard to the nonpayment of the premium, the agent's authority to extend credit for the premium, and the testimony that the agents did not claim authority to extend credit for the premium. The second class pertains to the denial of defendant's motion for a continuance.

The photographic copy of the application for the policy, which was signed by Alda C. Christophersen, was attached to and made a part of the policy. This application contained, among other things, the following statement:

"It is further agreed that the company shall incur no liability under this application until it has been received and approved, and the policy issued and delivered, and the full first premium stipulated in the policy has actually been paid to and accepted by the company during the lifetime of the life proposed."

Rules for the conduct of agents were offered, but were not received in evidence. The two important ones read:

"232. *Delivery of Policies.*—All policies are sent the day they are written at the Home Office. They should be offered to applicants as soon as possible after they are received but then only in exchange for the full cash premiums, provided in each case that the applicant is in good health.

"The policy is a receipt for the first premium, and therefore, if the policy be delivered except in exchange for the full cash premium, and the company is put to any expense in the way of litigation or payment of a claim, the company will look to the offender for reimbursement."

The policy contains the statement:

"In consideration of the application for this policy a copy of which application is attached hereto and made a part hereof, and of the payment of the semi-annual premium of eleven dollars and seventy-five cents, the receipt of which is hereby acknowledged," etc.

The policies also contain the following:

"No agent is authorized to waive forfeitures or make, modify, or discharge contracts or to extend the time for paying a premium."

We quote from the brief of counsel for appellant:

"The introduction of this policy undoubtedly raises a presumption that the premium has been paid, but it is the contention of the defendant, supported by the text-writers and a number of well-considered cases, that this presumption is not conclusive, and that in such cases the defendant may show that as a matter

of fact the premium has not been paid. It will be argued that the possession of the policy by Alda Christophersen is evidence of a conclusive delivery, but the manual possession of a life insurance policy has very little bearing upon the question of delivery. Delivery is a matter of intention. If the insurer intended by sending the policy to the applicant to put it in force, then there is a delivery. On the other hand, it is always open for the defendant to show under what circumstances the applicant has possession of the policy. The undisputed facts show that Alda Christophersen must have known that the policy she had in her possession was not in force. The letter written from Agent Brouwer inclosed in the envelope with the policy found with it after her death, informed her that not until the balance of the premium is paid will the policy be in force. It says: 'Will you please send $8.79 and your policy will be paid for six months.'

"In view of the law as we will show, it was clearly error for the court to refuse to admit any of the testimony of the defendant's witnesses as to the payment of the premium," counsel citing Richards on Insurance Law, p. 199. * * * Richards on Insurance Law, p. 495, which reads:

" 'The payment of the premium is the essence of the contract, and in fact constitutes all that the company receives on its part, and under the usual phraseology of life insurance policies a failure to pay on or before the day or hour stipulated will cause a forfeiture of a subsisting policy unless the company is in some way responsible for the omission or waives it.'

"Page 498: * * * Page 504, which reads:

" 'But in the case of ordinary life policy the liability of the company does not attach at all, and no compensation is earned until the first premium is paid or until note or credit or other substitute is accepted in its stead. Under such a policy the only result of nonpayment of the first premium is that the contract is not closed.' "

Counsel also cite other cases, including *Bowen* v. *Insurance Co.*, 178 Mich. 63 (144 N. W. 543, 51 L. R. A. [N. S.] 587). Counsel on the other side also cite

that case.   It is not controlling because there was no delivery of the policy to the insured.

It must be admitted that it would be difficult to harmonize all of the authorities.   The kernel of the nut to be cracked in the instant case is:   How is the fact of the payment or nonpayment of the first premium to be decided?

In 2 Words and Phrases, p. 1963, it is said under the head "Delivery by mail or to carrier":

"A delivery of goods to a common carrier, consigned to a particular person without specific directions, different from ordinary usage, is constructively a delivery to the consignee.   Where the vendee is the consignee, the delivery of goods to a common carrier, without qualifications, consigned to that vendee, is in law a constructive delivery to the consignee from the time of shipment and the commencement of the carriage. *Lake Shore, etc., R. Co.* v. *National Live Stock Bank,* 53 N. E. 326, 328, 178 Ill. 506, citing Benj. Sales (2d Am. Ed.), p. 649, par. 693, and *Merchants' Despatch Co.* v. *Smith,* 76 Ill. 542."

In the instant case the policy was inclosed in an envelope as follows:

"Return if not called for within 5 days to Metropolitan Life Insurance Company.   (Incorporated by the State of New York) New York.   Muskegon.
"MISS ALDA CHRISTOPHERSEN,
"4149 Ellis Ave.,
"Chicago, Ill."

It was postmarked "Muskegon, February 19, 7:00 p. m., Mich."

The envelope and policy were not returned to Muskegon by the insured, but were found in a dresser with other letters and papers belonging to her.   We think it must be held there was a delivery of the policy.

In 16 Am. & Eng. Enc. Law (2d Ed.), at page 862, it is said:

"*Interpretation and Construction.*—a. *General Prin-*

*ciples*—(1) *Interpretation to be made by Court.*—It is a firmly established and universally recognized rule of law that the construction of a written instrument is a question of law for the court; and where there is no ambiguity or conflicting inference of the language of the insurance policy when applied to the undisputed facts, it is error to leave its interpretation to the jury.

"(2) *General Rules of Construction.*—The same general rule of construction which applies to other instruments applies equally to policies of insurance; that is, they are to be construed agreeably to the intention of the parties.

"*Interpretation of Terms Used.*—This intention is in the first place to be drawn from the language of the instrument. The words employed are themselves to be understood in their plain, ordinary, and popular sense, unless they have generally, in respect to the subject-matter, as by the known usages of trade, or the like, acquired a peculiar sense distinct from the popular sense of the same words, or unless the context evidently points out that they must in the particular instance, and in order to effectuate the immediate intention of the parties to that contract, be understood in some other special and peculiar sense."

We have already seen that the rules given the agent, which the insured had never seen, forbid the delivery of the policy until the premium is paid. One of the rules indicates the company realizes the serious results which follow the delivery of the policy, and warns the agent the company will look to him for indemnity. We have also seen that it is recited in the policy that no agent has any right to make or modify the contract.

The query then is a very pertinent one, whether, after the policy reciting the fact that the premium has been received is delivered and the insured is dead and cannot testify upon the question of the payment or nonpayment of the premium, the company may absolve itself from liability by invoking the oral testi-

mony of the agent who took the application that he had violated his instructions.

May the written statements contained in the written contract, after the death of the insured and the liability under the policy has arisen, be contradicted by the oral testimony of the agent who is directly interested in the outcome of the litigation so as to result in the nullification of the recital in the contract? In one of the authorities cited by the appellant, 2 Bacon on Benefit and Life Insurance, § 353, it is said:

"*Policy Does Not Attach Until First Premium is Paid if Contract so Provides.*—By signing the application and accepting the policy the insured is deemed to have had notice of, understood, and agreed to the terms, limitations, and conditions contained in the application and the policy, and if the latter provides that it shall not take effect until the advance premium is paid during the lifetime of the assured, then, unless such payment is made, the policy does not attach, and the delivery of the receipt without payment avails nothing. Such payment is a condition precedent that must be complied with. Delivery of the policy by an agent contrary to instructions and by mistake will not make the company liable. * * *.

"But where the receipt of premium is acknowledged in the policy, the insurers will not be heard to deny the fact, unless they can show that the acknowledgment was made by fraud, error, or duress"—citing many cases in the note."

In *Teutonia Life Ins. Co.* v. *Anderson*, 77 Ill. 384, it is said:

"This court has twice decided that insurance companies, on the ground of public policy, will be estopped to prove, for the purpose of avoiding the contract of insurance, that the premium acknowledged in the policy to have been paid was not, in fact, paid. *Illinois Cent. Ins. Co.* v. *Wolf*, 37 Ill. 354 [87 Am. Dec. 251]; *Provident Life Ins. Co.* v. *Fennell*, 49 Ill. 180."

The question presented here was before the court in *Dobyns* v. *Bay State Beneficiary Ass'n*, 144 Mo.

95, 107 (45 S. W. 1107, 1110). We quote from the opinion:

"But the contention of defendant is that Mr. Dobyns never paid the advance premium, and hence the policy lapsed or never became a binding obligation on the company. The instructions were asked with a view to this failure to pay the advance premium. As this case was tried to the court without a jury, and the court found for the plaintiff, the plaintiff has not appealed, but it is entirely proper to note in considering defendant's appeal that plaintiff objected all along to the proof tending to prove the advance premium was not paid. If that evidence was not competent, then defendant has no ground of complaint. So that the all-controlling question in this case is: Can the defendant defeat plaintiff's recovery by proving that as a matter of fact Mr. Dobyns never paid the semi-annual assessment or premium, notwithstanding the formal acknowledgment of payment thereof in the policy or certificate? Upon authority, the analogies of the law, and reasons of sound public policy, we think not. Keeping in view the character of the insurance, we think the courts have settled the effect of the receipt in the body of this policy, and so far as they have spoken have conclusively estopped the defendant from averring or proving the nonpayment of the premium for the purpose of denying the existence of the contract of insurance. If this contract ever existed, it was good for six months from April 7, 1894, and hence was operative when Mr. Dobyns died on August 10, 1894. * * *

"Chancellor Kent, in his Commentaries, says that 'the receipt of the premium in the policy is conclusive evidence of payment and binds the insurer unless there be fraud on the part of the insured.' 3 Kent's Com. note, p. 260. The supreme court of Illinois, in *Illinois Cent. Ins. Co.* v. *Wolf*, 37 Ill. 354 [87 Am. Dec. 251], *Provident Iife Ins. Co.* v. *Fennell*, 49 Ill. 180, and *Teutonia Life Ins. Co.* v. *Anderson*, 77 Ill. 384, holds that 'insurance companies, on the ground of public policy, will be estopped from proving, for the purpose of avoiding the contract, that the premium acknowledged in the policy to have been paid was not in fact paid.'

To the same effect see *Fellowes* v. *Insurance Co.*, 2 Disney (Ohio), 128; *New York Cent. Ins. Co.* v. *Insurance Co.*, 20 Barb. (N. Y.) 475; *Dalzell* v. *Mair*, 1 Camp. 532; *Foy* v. *Bell*, 3 Taunton, 492; 1 Phillips on Ins. §§ 514, 515; 1 Marshall on Ins. p. 335. These decisions are in harmony with the rulings of this court and the great current authority in the United States that, while for some purposes parol evidence is admissible to show the real consideration in a deed, it is not permitted by parol 'to so vary or control the operative words of the deed as to defeat the conveyance.' *McConnell* v. *Brayner*, 63 Mo. 461; *Hollocher* v. *Hollocher*, 62 Mo. 267."

The opinion is very long, and cites many authorities.

In *Basch* v. *Insurance Co.*, 35 N. J. Law, 429, the policy recited the receipt of the premium, and the court said in part:

"It is very clear that this action must altogether fail, if the fact that the premium for the insurance was not paid before the loss is competent evidence in the case. The only question on this first point, therefore, is whether the company can be permitted to show, under the circumstances of the case, the failure of the plaintiff to pay the premium anterior to the fire in compliance with the condition of the policy, which has been recited.

"This policy of insurance, executed by the president and secretary of the company, contains a formal acknowledgment of the payment of the premium in question, and, in my opinion, this should prevent the defendants from averring or showing nonpayment for the purpose of denying that the contract ever had any legal existence. What does this receipt in its connection with the delivery of the instrument import, if it does not mean that the payment of the premium is conclusively admitted to the extent that such payment is necessary to give vitality to the contract? Unless this be its meaning, it serves no legal office, for it does not mean that the money has been actually received. It is true that there is an express declaration that the policy is to have no effect until the premium shall have been paid; but in this same instrument is an equally

express statement that the act on which the contract is to become efficacious has been done. Such an acknowledgment appears to be analogous, and equivalent to the acknowledgment of the receipt of a valuable consideration in a conveyance operative by force of the statute of uses; such acknowledgment being always considered conclusive for the purpose of giving a legal force to the transaction. This policy of insurance purports to have an effect immediate on delivery, founded on a paid-up consideration; it does not seem competent for the promisor to prove that the acknowledgment is not true, and that the contract never had any existence. I think, when the assured received this policy, he had a right to presume either that the agent had settled the premium with the company, or that they, by their receipt, intended to relinquish the clause requiring prepayment.

"The usual legal rule is that a receipt is only *prima facie* evidence of payment, and may be explained; but this rule does not apply when the question involved is not only as to the fact of payment, but as to the existence of rights springing out of the contract. With a view of defeating such rights the party giving the receipt cannot contradict it. An acknowledgment of an act done, contained in a written contract, and which act is requisite to put it in force, is as conclusive against the party making it as is any other part of the contract; it cannot be contradicted or varied by parol."

After a life insurance policy is delivered containing a statement of fact, and the insured is dead, it would not conserve public policy to annul the liability growing out of such an instrument by permitting oral proof that the fact stated did not exist.

We come now to the second question: Did the court so abuse its discretion in the conduct of the trial by overruling the motion for a continuance to require a reversal of the case? The testimony offered in evidence was that of witnesses outside the jurisdiction of the Michigan court. The depositions were taken by the Chicago attorneys of the defendant company.

The requirements of the statute to entitle the depositions to be read could be easily ascertained, and with a small degree of diligence could be met.

The case had been at issue five months. The trial was well under way when the depositions were offered. The plaintiff had closed her case, and two witnesses had been sworn on the part of the defendant. We do not think the trial judge so abused his discretion as to the conduct of the trial as to require our interference. See *Bussey* v. *Bussey*, 71 Mich. 504 (39 N. W. 847) ; *Winklemeir* v. *Daiber*, 92 Mich. 621 (52 N. W. 1036) ; *McNaughton* v. *Evert*, 116 Mich. 141 (74 N. W. 486) ; *Roney* v. *Healy*, 170 Mich. 46 (135 N. W. 959).

The judgment should be affirmed, with costs to the plaintiff.

BIRD, J., concurred with MOORE, J.

OSTRANDER, J. The first point involved in the case is decided by my Brother MOORE by application to the facts disclosed of a rule of evidence. The rule applied is that the admission or recital in a policy of life insurance that the premium has been paid is, for the purpose of making a completed contract, conclusive evidence of such payment when manual possession of the policy is given to the insured by the insurer or by its agent. The facts tend to disprove that the premium on the particular policy had been paid when possession of the policy came to the insured. The letter which went with the policy negatives payment. In precise keeping with the application for the policy, the letter advises the insured that the premium is not paid, and, by necessary inference, that until paid the policy will not be in force. It plainly appears that when the policy came to the possession of the insured she was advised that the contract of insurance was not in force, was not a completed contract. Like other

contracts, a contract of life insurance must be completed before it is enforceable. The application for the policy, a preliminary negotiation for the contract of life insurance, evidences the understanding of the insured that payment of the premium was required in order to complete the contract. Assume that an agent of the insurer might waive the payment and thereby bind his principal. There is no evidence that this agent waived, or intended to waive, the payment of premium. Nothing which he did can be construed as a waiver, unless it is the giving of manual possession of the policy to the insured. But the agent did not unequivocally deliver the policy. He sent a letter with it. All that he did must be considered, not a part of it only. And when all that he did is considered, and is referred to the preliminary negotiation evidenced by the application for the policy, we have a set of facts tending to prove that in contemplation of neither of the parties was there a completed contract. It may be put rather stronger than this. The facts tend to prove that both parties knew that the contract, to be completed, required the payment of the premium. It is plain that the defendant company, the insurer, was at pains to have it mutually understood that payment of the premium was essential to a completed contract. Whatever the legal effect of an unequivocal delivery of the contract may be, no such delivery was made in this case. The rule of evidence sought to be applied has the effect of making a contract which the parties knew was not made. As sought to be applied, it conclusively establishes a fact, the existence of which the conduct of the parties negatives.

In *Russell* v. *Insurance Co.*, 176 N. Y. 178 (68 N. E. 252, 98 Am. St. Rep. 656), the policy was delivered. The receipt for the first premium was not, but by agreement was retained by the agent until the pre-

mium should be paid.  In this case, as in that, there was the evidence that there had been no unqualified delivery of the policy.  See, also, *Rousseau* v. *American Yeomen*, 186 Mich. 101 (152 N. W. 939).  In my opinion, the trial court was in error in ruling that the evidence conclusively established a completed contract. Public policy is not served—not served with public profit—by the use of a rule which can work only private injustice.

I am of opinion also that it was an abuse of discretion to refuse defendant opportunity to perfect the certification of the depositions containing the testimony upon which a part of the defense is based.

KUHN, C. J., and STONE, STEERE, BROOKE, and FELLOWS, JJ., concurred with OSTRANDER, J.